# Third District Court of Appeal

## State of Florida

Opinion filed January 10, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1261
Lower Tribunal No. 21F-02790
_____

## C.V.,
Appellant,

vs.

## Agency for Persons with Disabilities,
Appellee.


An Appeal from the State of Florida, Department of Children and Families, Office of Appeal Hearings.

University of Miami School of Law, Children & Youth Law Clinic, and Bernard P. Perlmutter and Kele M. Stewart, for appellant.

Carrie B. McNamara, Chief Appellate Counsel, and Francis A. Carbone, General Counsel (Tallahassee), for appellee.


Before EMAS, SCALES and MILLER, JJ.

PER CURIAM.

Affirmed.  See O.H. v. Agency for Persons with Disabilities, 332 So. 3d 27 (Fla. 3d DCA 2021).

EMAS and SCALES, JJ., concur.

MILLER, J., dissenting.

I respectfully dissent. This case presents an issue of exceptional importance. Namely, whether the Agency for Persons with Disabilities (the "Agency") is authorized to deny an applicant enrollment in the Individual Budgeting Home and Community-Based Services Medicaid Waiver Program (the "HCBS Waiver Program") based on a single, non-preferred full-scale IQ score that fails to account for the test's validity and reliability. I conclude it is not.

As the majority's citation affirmance implies, the facts underlying the decision to deny eight-year-old C.V., a foster child, enrollment on the basis of intellectual disability mirror those in O.H. v. Agency for Persons with Disabilities, 332 So. 3d 27 (Fla. 3d DCA 2021). As in O.H., upon receiving a well-supported application for benefits, the Agency retained Dr. Vanessa Archer for the purpose of administering the Comprehensive Test of Non-Verbal Intelligence, Second Edition (the "C-TONI II"), "which, although presumptively valid when used in support of an application for benefits, is not one of the two preferred tests for measuring intellectual functioning under the [Florida Administrative] Code." Id. at 36 (Miller, J., dissenting). Dr. Archer administered the test to C.V. but subsequently reported her results

3

without accounting for the standard error of measurement (the "SE*m*"). The SE*m* is necessary to assess the limits of the confidence interval.

Without the SE*m*, C.V.'s test score exceeded 70, the pivotal number for satisfying the statutory definition of "significantly subaverage general intellectual functioning." § 393.063(24)–(24)(b), Fla. Stat. (2022); see also O.H., 332 So. 3d at 37 (Miller, J., dissenting) ("[F]or most IQ tests, the mean is 100 and the standard deviation is 15. Thus, 'two or more standard deviations below the mean' generally translates to a full-scale score of approximately 70 points or below."). With the SE*m*, however, the test score was both within the range indicative of "significantly subaverage general intellectual functioning" and consistent with the results reported by other experts. § 393.063(24)–(24)(b), Fla. Stat. (2022).

As I noted in my dissent in O.H., our highest court has recognized that IQ testing "'is imprecise' and '[i]ntellectual disability is a condition, not a number.'" O.H., 332 So. 3d at 34–35 (Miller, J., dissenting) (quoting Hall v. Florida, 572 U.S. 701, 723, (2014)). To account for this nebulosity, "the rules promulgated by the Agency require an examiner to interpret the results of certain [non-preferred] IQ tests in accord with the instructions supplied by the producer and report published data relating to the test's reliability and validity." Id. at 35 (citing Hall, 572 U.S. at 723); see also Fla. Admin. Code

4

R. 65G-4.012. The C-TONI II is one such test, and the SE*m* establishes a statistical confidence interval as to the range within which the true score falls. It follows that, "although a single test score may be used to establish eligibility for benefits, it should not be used to deem an applicant ineligible." O.H., 332 So. 3d at 35 (Miller, J., dissenting) (citing Fla. Admin. Code R. 65G-4.017(3)(a)).

Here, there is no dispute C.V. suffers "deficits in adaptive behavior which manifest[ed] before the age of [eighteen] and can reasonably be expected to continue indefinitely." § 393.063(24), Fla. Stat. Further, other than the incomplete test score reported by Dr. Archer, all evidence of record established C.V. concurrently suffers from significantly subaverage general intellectual functioning. See id.

Because Dr. Archer did not report the SE*m*, the testing methodology deviated from the applicable regulatory scheme. The ruling by the hearing officer is therefore not supported by competent, substantial evidence, and we should reverse the order under review. Accordingly, I am constrained to dissent.